In the Matter of the Estate of GEORGE W. ROBERTS, Deceased. LORETTO LOHMAN ROBERTS, Respondent, v. FRANKLIN H. ROBERTS and HELEN ROBERTS TRUAX, Appellants.

No. 9661.

Decided April 29, 1959. Dissenting Opinion May 4, 1959.

338 Pac. (2d) 719. 361 U. S. 825.

MR. JUSTICE ADAIR dissented.

Wuerthner & Wuerthner, C. W. Murch, Great Falls, for appellant.

Hall, Alexander & Kuenning, Great Falls, for respondent.

THE HONORABLE VICTOR H. FALL, District Judge:

The facts involved in this appeal are:

George W. Roberts died testate on November 9, 1954. He

left surviving his widow, Loretto Lohman Roberts. There were no children. The will was offered for and admitted to probate. No question whatever has been raised relative to the validity of the will. Letters testamentary were granted to the surviving widow, respondent herein, and her coexecutor on December 4, 1954. The inventory and appraisement filed April 19, 1955, disclosed that the estate consisted wholly of personal property —cash in the sum of $49,296.60, stocks, bonds, notes and mortgages, which together with other personal property amounted to a total value in excess of $306,000. On June 18, 1955, a supplemental inventory and appraisement listed, ''for tax purposes only,'' real property situate in Cascade County, Montana, of the value of $25,000. Total creditors' claims filed amounted to less than $1,500. Under the terms of the will the testator left two legacies: one in the sum of $20,000 to his brother, Franklin H. Roberts; and a like legacy to his sister, Helen Roberts Truax. The entire residue of the estate was left to the surviving widow, respondent herein.

On May 27, 1955, Loretto Lohman Roberts, surviving widow, pursuant to the provisions of sections 22-107 and 22-108, R.C.M. 1947, filed her renunciation of the will. No question is raised as to her right to renounce, nor as to the sufficiency of the renunciation filed as to form.

On June 14, 1955, Loretto Lohman Roberts filed her petition for determination of heirship, resulting after due presentation to the court below, in this court's decree dated December 14, 1955, and filed December 17, 1955, that she was entitled under the law to the whole of the estate. This appeal is from the judgment and decree.

The sole question presented is, may a surviving widow by renouncing the benefits of a will thereby create an intestacy? The question has never been squarely before this court prior to his appeal.

The right to dispose of property by will is a valuable right and will be protected by the courts, absent certain well-defined exceptions as to capacity, none of which are presented here and

subject to certain restrictions as to amount. Ordinarily a renunciation is used by a surviving widow when her protected dower interest in real property exceeds in value the provisions made for her under the will.

The "renunciation" statute applicable herein, section 22-107, R.C.M. 1947, and prior to amendment, read as follows:

"Every devise or bequest shall bar a widow's dower in lands or her share in personal estate unless otherwise expressed in the will; but she may elect whether she will take such devise or bequest, or whether she will renounce the benefit of such devise or bequest, and take her dower in the lands and her share in the personal estate." This section was amended by the enactment of chapter 231, Laws of 1955, effective July 1, 1955, to read as follows:

"Every devise or bequest to her by her husband's will shall bar a widow's dower in his lands and her share in his personal estate unless otherwise expressed in the will; but she may elect whether she will take under the provisions for her in the will of her deceased husband or will renounce the benefit of such provisions for her, and take her dower in the lands and her share in the personal estate under the succession statutes, as if there had been no will, but not in excess of two-thirds (2/3) of the husband's net estate, real and personal, after the payment of creditors' claims, expenses of administration and and all taxes, including state and federal inheritance and estate taxes." The 1955 amendment is not applicable here and it is to be considered only as it might aid in statutory construction.

It will be noted that under the provisions of section 22-107, R.C.M. 1947, supra, prior to the amendment and the law with which we are concerned, provided, in case of a widow's renunciation she would then "take her dower in the lands and her share in the personal estate." Dower is defined by section 22-101, R.C.M. 1947, and is not applicable here, as no real property is involved in this appeal. "* * * her share in the personal estate" was not defined prior to the enactment of

152

chapter 231, Laws of 1955, and we need not define it here for reasons that follow.

Our statutes relating to dower were evidently adopted from California, this is not true of those relating to dower. California has no statutes comparable to ours which are now found in sections 22-101 and 22-107, R.C.M. 1947. Our statutes on the subject were adopted in 1876, and are found in the Laws of Montana, Ninth Session, commencing on page 63. Section 1 thereof was an exact copy of section 1 of the statutes of Illinois on dower found in Scates, Treat and Blackwell Statutes of 1858 (Ill. Rev. Stat. 1845, Chap XXXIV). It now appears with an amendment added to the codes by Section 228, Civil Codes of 1895 as section 22-101.

Section 22-102 is an exact copy of section 3 of the Illinois statute.

Section 22-103 is an exact copy of section 4 of the Illinois statutes.

Section 22-104 is an exact copy of section 5 of the Illonois statutes.

Section 22-105 is an exact copy of section 6 of the Illinois statutes.

Section 22-107 before its amendment in 1955 was an exact copy of section 10 of the Illinois statute except that the Illinois statute had on the end the words ''of her husband,'' but the omission of those three words from our statute did not change its meaning.

Section 22-108 is identical with section 11 of the Illinois statute.

Section 22-109 is identical with section 15.

Section 22-110 is identical with section 16.

Section 10 of the Act of 1876 was identical with section 17 of the Illinois statute, but has since been dropped from our statute, and section 11 of the Act of 1876 was identical with section 18 of the Illinois statute, but it too has been dropped from our statute.

It is quite apparent that our statutes on dower, with some

slight modifications not material here, were adopted from Illinois. Prior to their apodtion the Supreme Court in Illinois under facts identical with those here held that the widow, upon her election to renounce the will, was not entitled to all of the personal property of the testator under statutory provisions giving her that right when her husband died intestate.

The Illinois court in speaking on that point in McMurphy v. Boyles, 49 Ill. 110, 113, which was decided in 1868, said:

"On the other hand, it is urged by counsel for appellant as already stated, that the widow, having renounced the will, is entitled to the same share of the personal estate that she would have received had there been no will, which in this case, as there were no children or descendents of children, would be the whole. This theory proceeds upon the assumption that, by the widow's renunciation of the will, the testator had become intestate, which is simply a contradiction in terms. The will remains, notwithstanding she has chosen to decline its provisions in her favor, and by no act of hers can it be annihilated, and the estate of her husband be converted into an intestate estate. Yet the 46th section of the statute of wills, under which this claim to all the personal property is made, applies only to intestate estates. This case, then, is not within its category."

This construction has been consistently followed by the Illinois court. In Kilgore v. Kilgore, 319 Ill. 298, 149 N.E. 754, 755, the court said: "When he died testate, she acquired no vested right in his estate under the law of descent * * *. [renunciation] did not give or purport to give to her the same interest which she would have received in case he died intestate. * * *

" * * * This court has held in a long line of cases that where the widow renounces the provisions made for her by the will of her deceased husband and elects to take under the law, such renunciation does not have the effect to render any part of the estate of the deceased husband intestate estate." McMurphy v. Boyles, 49 Ill. 110; Marvin v. Ledwith, 111 Ill. 144; Re Qua v. Graham, 187 Ill. 67, 58 N.E. 357, 52 L.R.A.

641; Laurence v. Balch, 195 Ill. 626, 63 N.E. 506; Lewis v. Sedgwick, 223 Ill. 213, 79 N.E. 14; Dunshee v. Dunshee, 251 Ill. 405, 96 N.E. 298, and Id., 263 Ill. 188, 104 N.E. 1100; Wakefield v. Wakefield, 256 Ill. 296, 100 N.E. 275, Ann. Cas. 1913E, 414; Davis v. Mather, 309 Ill. 284, 141 N.E. 209.

Under repeated decisions of this court, a borrowed statute will receive the same construction by this court which it had previously received by the courts of the state from which it was adopted. Many of the cases so holding are cited in Esterly v. Broadway Garage Co., 87 Mont. 64, 285 Pac. 172.

One other point should be noted.

In the annotations appearing under each section of the codes from sections 22-101 to 22-110, inclusive, it is stated that the section was first enacted in 1866 which was before the decision in the McMurphy case. However, an examination of chapter XXXVI of the Laws of 1866 will disclose that all of its provisions are quite different from the Illinois statutes than in effect and of course quite different from sections 22-101 to 22-110 as they were adopted in 1876 after Congress by the Act of March 2, 1867 (Vol. 14 U. S. Statutes at Large, page 426), had declared the act of 1866 a nullity.

The first time that Montana had statutes comparable to what are now sections 22-101 to 22-110 was in 1876 when they were adopted from Illinois. Aside from the point of adopting the construction placed upon the statute by Illinois this court in Dahlman v. Dahlman, 28 Mont. 373, 377, 72 Pac. 748, 750, indicated that it would reach the same conclusion when a widow elects to renounce the will. The court said: "This estate falls to her, not as heir, or by will of her husband, but by virtue of her marital right, and without regard to the law relating to the rights of heirs, or to any will made by the husband."

The same construction has been given by other courts under similar facts as for example, Kuhn v. Kunh, 125 Iowa 449, 451, 101 N.W. 151, 152. That court said: That when a widow renounces she takes only that amount of the estate she is en-

titled to under "the Code * * * as a matter of contract
and of right, and not by inheritance."

·· In. In re .Estate of Noble, 194 Iowa 733, 739, 190 N.W. 511,
·513, 26: A.L.R.· 86, that court stated:

"If the decedent had died intestate, there can be no question
that, under section 3379 · [I.C.A. section 636.32], the widow
would been entitled to the entire estate above debts and ex-
·penses to the amount of $7,500 and one-half of the excess but,
·we view it, that statute has no application to the situation in
this case. The decedent did not ·die ·intestate. ·The widow re-
nounced the will and elected to take her distributive share, and
has received from the ·entire estate of the testator her full share
therein. This is all that she can obtain from the estate of a
decedent who leaves a will * * *. The decedent having died
testate, her share in his estate, in the event she renounced the
will, is limited to one-third share therein. This share is to be
enlarged only in the single instance where a decedent dies
*intestate*. It has no application to a situation where he dies
leaving a will."

· And see· Suiter v. Suiter, 323 Ill. 519, 522, 154 N.E. 337;
Johnson v. Stringer, 158 Md. 315, 148 A. 447, 451; Second Nat.
·Bank c. Second Nat. Bank, 171 Md. 547, 190 A. 215, 111 A.L.R.
711; Cochran v. Garth, 163 Tenn. 59, 40 S.W. (2d) 1023, 76
A.L.R. 1413; 4 Page, Wills, pages 12, 74; 19 Tenn. Law Rev.
941; 2 Cinn. Law Rev. 310.

As pointed out in the authorities cited, when the respondent
herein renounced the provisions made for her under the will,
she did not thereby automatically place herself in a position
whereby she was entitled to inherit the statutes of succession.
This is true for the reasons pointed out above and also is dem-
onstrated by the wording· of our statute of succession, the bene-
fit of which provision is here sought by the respondent.

As above noted we need.not here determine what interest in
the personal estate the widow is entitled to upon renouncing
the will. Certainly she is not entitled to the whole thereof. It
is noteworthy that the Illinois courts have limited her to a

one-third interest therein. McMurphy v. Boyles, supra; White v. Dance, 53 Ill. 413; In re Taylor's Will, 55 Ill. 252. These devisions so holding were rendered before we adopted the statute and from what has been said we will presume that the legislature intended to adopt such construction.

Our statute of succession (chapter 140, Laws of 1941, now R.C.M. 1947, section 91-403) pertinent here, provides: "When any person * * * *dies without disposing of the estate by will*, it is succeeded to and must be distributed * * * in the following manner: * * *

"2. If the decedent leaves no issue, the whole of the estate shall go to the surviving husband or wife * * *" Emphasis supplied.

It is to be noted that in the instant appeal, the deceased did not die without disposing of his estate by will, but on the contrary, left very specific instructions with regard to the disposition of his estate, and nothing is contained in any statute which makes it impossible to follow his expressed wishes. Furthermore, in this connection, attention is particularly invited to the wording of the 1955 amendment, to section 22-107, supra, which now provides that in the event the widow elects, then she shall "take her dower in the lands and her share in the personal estate *under the succession statutes*." Emphasis supplied. This clearly demonstrates that our Legislature has now clarified the situation with reference to the share that a renouncing widow may have and has put to rest the question of that amount following the renunciation of the benefits of a will.

In this state, section 91-312, R.C.M. 1947, provides:

"Legacies are due and deliverable at the expiration of one year after the testator's decease. * * *"

Interest upon legacies is provided for by section 91-313, R.C.M. 1947, reading in part: "Legacies bear interest from the time when they are due and payable * * *"

The judgment and decree of the district court is reversed with instructions to enter judgment and decree determining that Franklin H. Roberts is entitled to his legacy in

the sum of $20,000 and that Helen Roberts Truax is entitled to her legacy in the sum of $20,000, and after payment thereof the residue of the estate be distributed to the surviving widow; said judgment and decree to provide for interest at the statutory rate to the two legatees from November 9, 1955, to date of payment. Appellants to recover their costs on appeal.

On motion for rehearing the opinion promulgated herein on March 21, 1958, is hereby withdrawn and this opinion reaching the same conclusion is substantiated in lieu thereof.

The motion for rehearing is denied.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICES CASTLES and ANGSTMAN, concur.

MR. JUSTICE ADAIR: (dissenting).

A careful consideration of respondent's petition for rehearing, and of the briefs in support of and in opposition to such petition, has convinced me that the majority opinion herein is contrary to the express statutes of Montana in effect and controlling at the time of the husband's death and that under the plain provisions of such governing statutes, the widow's petition for a rehearing should have been allowed and the cause should have been further considered to the end that the judgment given and rendered in the district court by District Judge C. B. Elwell in favor of the respondent widow, Loretto Lohman Roberts, and against her deceased husband's brother, Franklin H. Roberts, and the decedent's sister, Helen Robert Truax, be affirmed.

George W. Roberts and Loretto Lohman Roberts were longtime residents of the State of Montana. To their marriage the state made itself a party. See Franklin v. Franklin, 40 Mont. 348, at page 350, 106 Pac. 353, 26 L.R.A., N.S., 490.

Their marriage resulted in a change in the status of each of the parties. Under the law it involved a change in their respective rights, duties, obligations and responsibilities.

*Right to Make a Will.* The power to leave property by will

is derived from the law and depends solely on the law for its extent and enforcement. This power is nat a *nautral right*, as is the right of living men to own and control property created by their labor. When brain and hand no longer act, the *natural right* ceases and the right to control property is then only that given by the law.

In the case of In re Noyes' Estate, 40 Mont. 178, at page 185, 105 Pac. 1013, at page 1015, Mr. Chief Justice Brantly speaking for this court said:

"The right to make a testamentary dispostion of property is not an inherent right; nor is it a right guaranteed by the fundamental law. Its exercise to any extent depends entirely upon the consent of the Legislature, as expressed in the statute enacted on the subject. It can withhold or grant the right, *and, if it grants it, it may make its exercise subject to such regulations and requirements as it pleases.*" Emphasis supplied.

In the case of In re Mahaffay's Estate, 79 Mont. 10, 23, 254 Pac. 875, 879, this court said:

"The right to make testamentary disposition of property is one wholly within the province of the Legislature of the state. In United States v. Perkins, 163 U.S. 625, 16 S. Ct. 1073, 41 L. Ed. 287, the court said: 'We know of no legal principle to prevent the Legislature from taking away or limiting the right of testamentary disposition or imposing such conditions upon its exercise as it may deem conducive to public good.' The state having the power to deny the right of testamentary disposition altogether (In re Noyes' Estate, 40 Mont. 178, 105 Pac. 1013), *when it grants it, it may annex to the grant any conditions which it supposes to be required by its interest or policy.*' Mager v. Grima, 8 How. 490, 12 L. Ed. 1168." Emphasis supplied.

The Montana legislature has enacted laws which grant to both the husband and the wife the right to make wills but to such grants are annexed certain limitations and conditions.

The Revised Codes of Montana of 1947, provide:

"91-101. (6974) *Who may make a will.* Every person

over the age of eighteen years, of sound mind, may, by last will, dispose of all of his estate, real and personal, and such estate not disposed of by will is succeeded to as provided in sections 91-401 to 91-422, being chargeable in both cases with the payment of all the decedent's debts, as provided in this Title."

"91-102. (6975) *Married women, wills by.* A married woman may make a will in the same manner and with the same effect as if she were sole, except that such will shall not, without the written consent of her husband, operate to deprive him of more than two-thirds of her real esate, or of more than two-thirds of her personal estate."

Thus has the Montana legislature, in enacting section 91-102, supra, granted to a wife the right to make a will, but to this grant it has annexed the limitation and condition that her "will shall not, without the written consent of her husband, operate to deprive him of more than two-thirds of her real estate, or more than two-thirds of her personal estate." See In re Mahaffay's Estate, supra.

*Survivor's Share.* Section 91-403 of the Revised Codes of Montana of 1947, being one of the sections included "in sections 91-401 to 91-422" referred to in section 91-101, supra, specifies the share or portion a surviving husband or wife shall have and take in the estate of the spouse who died without disposing of the estate by will.

Section 91-403, supra, so far as pertinent here reads:

"91-403. (7073) *Succession to and distribution of estates.* When any person having title to any estate not limited by marriage contract dies without disposing of the estate by will, it is succeeded to and must be distributed, unless otherwise expressly provided by the laws of Montana, subject to the payment of his debts, in the following manner:

"1. If the decedent leaves a surviving husband or wife, and only one (1) child, or the lawful issue of one (1) child, in equal shares to the surviving husband, or wife and child, or issue of such child. * * *

"2. If the decedent leaves no issue, the whole of the estate shall go to the surviving husband or wife. If the decedent leaves no issue, nor husband nor wife, the estate must go to the father and mother in equal shares, or if either be dead then to the other.

"3. If here be neither issue, husband, wife, father, nor mother, then in equal shares to the brothers and sisters of the decedent, and to the children of any deceased brother or sister, by right of representation."

On November 9, 1954, George W. Roberts, the husband, then, and for many years prior thereto, a resident of Blaine County, Montana, died leaving estate in that county consisting wholly of personal property. He left surviving him his widow, Lorretto Lohman Roberts. There were no issue of the marriage and no descendent of any issue, hence no lineal descendents.

*Widow's Share.* In the event the husband should die without either issue or the descendents of issue and without disposing of his estate by will, then under the express provisions of the law of Montana, as set forth in the first sentence of subdivision 2 of section 91-403 of the Codes, supra, "the whole of the estate shall go to the surviving * * * wife."

Under this law, subdivision 2 of section 91-403, supra, the *widow's share* or portion of her deceased husband's estate amounts to "the whole of the estate" after the payment of all the decedent's debts and the costs and expenses of administration. Where the estate consists solely of personal property —where there were and are no issue and where the husband dies wihout disposing of the estate by will, the law says "the whole of the estate shall go to the surviving * * * wife." Such, *under the law*, is the childless' *widow's share* or portion in the absence of a will.

*The Husband's Will.* However, George W. Roberts did exercise the *right* granted him by the law, section 91-101, supra, and he did make a will which bears date of April 2, 1953, wherein, *inter alia*, he declared:

"Third: I give and bequeath to my sister, Helen Roberts

Truax, the sum of Twenty Thousand Dollars ($20,000.00).

"Fourth: I give and bequeath to my brother, Franklin H. Roberts, the sum of Twenty Thousand Dollars ($20,000.00).

"Fifth: All of the rest and residue of my property and estate, both real and personal * * * I give devise and bequeath to my wife, Loretto Lohman Roberts."

In December 1954, the above will was admitted to probate in the district court for Blaine County, Montana.

While it was within the province of the legislature to grant the right to make testamentary disposition of property yet it may withhold or deny such right or repeal, amend, abrogate or change or limit the exercise of such right in any manner that the legislature may deem advisable so long as its action is not violative of the limitations imposed upon it by the Constitution.

*Widow's Right to Repudiate Will.* While the legislature granted to the husband, George W. Roberts, *the right to make the will which he made,* the legislature also granted to the surviving wife, Loretto Lohman Roberts, *the right to decline and refuse to take any* bequest or devise provided for her in the will and *to repudiate, renounce and forego* all such benefits as she should receive under the will, and in lieu thereof to elect, demand, and take her dower in the lands, if any, and to take *"her share in the personal estate"* as is provided for her by the laws of this state.

*Widow's Right to Elect and Renounce.* At the time of the husband's death which occurred on November 9, 1954, the Revised Codes of Montana of 1947, then provided:

"22-107. (5819) *Widow may elect.* Every devise or bequest shall bar a widow's dower in lands or her share in personal estate unless otherwise expressed in the will; but *she may elect whether she will take such* devise or *bequest,* or whether she will renounce the benefit of such devise or *bequest, and take* her dower in the lands and *her share in the personal estate."* (Emphasis supplied.)

Thus by its enactment of section 22-107, supra, did the Mon-

tana legislature place a limitation on the right of the husband to devise or bequeath to his childless widow any lesser share, portion or amount of his estate than she would be entitled to take *under the law,* as it is set forth in section 91-403, subd. 2, supra.

The above-quoted statute constituted the law of Montana continuously from the first day of July 1895 when the Montana Codes of 1895 took effect to the first day of July 1955, on which latter date Chapter 231 of the Montana Session Laws of 1955, pages 501, 502, amending section 22-107, supra, became effective. Such was the law on November 9, 1954, whereon the husband died and the title to his property passed, either under his will or under the law as it was then written in the Montana statutes.

*Widow's Right.* The provisions of section 22-107, supra, granted to the surviving widow *the right* to "elect whether she will take such \* \* \* bequest" as her husband had provided in his will "or whether she will renounce the benefit of such \* \* \* bequest and take \* \* \* her share in the personal estate" left by the testator, George W. Roberts. Such was and is the widow's statutory *right* under the law then in force.

Three times in the single sentence comprising section 22-107, supra, did the legislature use the words "devise or bequest."

A *"devise"* is: "A testamentary disposition of land or realty; a gift of real property by the last will and testament of the donor." Black's Law Dictionary, De Luxe 3rd edition page 572. The testator, George W. Roberts, left no land or realty. He left no property to which a widow's dower could attach.

A *"bequest"* is: "A gift by will of personal property a legacy." Black's Law Dictionary, supra, at page 210. Personal property alone constituted the testator's entire estate, and this he declared he did "give and bequeath" to his sister, his brother and his wife.

This court in In re Fratt's Estate, 60 Mont. 526, at page 537, 199 Pac. 711, at page 713, 714 said: "Bouvier defines 'devise' as 'a gift of real property by a last will and testament,' and 'bequest' as 'a gift by will of personal property.'

"Undoubtedly the Legislature, in framing our statutes, used both these words in their correct and approved legal and technical sense."

Section 22-108, Revised Codes of Montana of 1947, reads:

"22-108. (5820). *Renunciation and form of.* When a woman is entitled to an election under this chapter, she shall be deemed to have taken such devise, unless, within one year after the authentication or probate of the will, she shall deliver or transmit to the district court of the proper county a written renunciation, which may be in the following form, to-wit: 'I, A B, widow of C D, late of the county of————, state of Montana, do hereby renounce and quit all claims to the benefit of any bequest or devise made to me by the last will and testament of my said deceased husband, which has been exhibited and proved according to law (or otherwise, as the case may be), and I do elect to take in lieu thereof my dower, or legal share of the estate of my said husband,' which said letter of renunciation shall be filed in the office of the clerk of the district court, and shall operate as a complete bar against any claim which such widow may afterwards set up to any provision which may have been thus made for her in the will of any testator, in lieu of dower; and by thus renouncing all claims as aforesaid, such widow shall thereupon be entitled to dower in the lands or share in the personal estate of her husband."

In strict compliance with the mandates of sections 22-107 and 22-108, supra, the widow of George W. Roberts, on May 27, 1955, delivered to and caused to be filed in the district court for Blaine County, Montana, her timely and proper written renunciation of any and all claims to the benefit of any bequest or devise made to her by the last will and testa-

ment of her late husband, which renunciation, omitting the title of the court and cause reads as follows:

"Widow's Renunciation of Will

"To The District Court of The Twelfth Judicial District of The State of Montana, In and For The County of Blaine:

"I, Loretto Lohman Roberts, widow of the above named decedent, George W. Roberts, late of the County of Blaine, State of Montana, do hereby renounce and quit all claims to the benefit of any request or devise made to me by the Last Will and Testament of my said deceased husband, which has been exhibited and proved according to law in the above Court, and I do elect to take *in lieu thereof of my dower* in any real property owned by my said husband at the time of his death *and my legal share in the personal esate* of my said husband.

"Dated this 15th day of March, 1955.

"/s/ Loretto Lohman Roberts.

"Witness:

"/s/ H. C. Hall

"Filed: May 27, 1955." (Emphasis supplied.)

*Effect of Renunciation.* By her above-written renunciation, the childless widow did in the precise manner expressly provided in sections 22-107 and 22-108, supra, clearly "renounce and quit all claims to the benefits of any bequest or devise made to" her by her late husband's will. *Thus did the childless widow elect to take nothing whatever under the will.*

Instead of taking under the will the childless widow declared: "I do elect to take in lieu thereof my dower in any real property owned by my said husband at the time of his death *and my legal share in the personal estate of my said husband.*" Emphasis supplied.

Section 22-101, Revised Codes of Montana of 1947, so far as pertinent here, provides:

"22-101 (5813) *Dower.* A widow shall be endowed of the third part of all lands whereof her husband was seized of an estate of inheritance at any time during the marriage, unless

the same shall have been relinquished in legal form. * * *''

The record shows that at the time of his death George W. Roberts owned no real property of any kind or character hence the surviving wife took and takes nothing whatever under the dower statute, being section 22-101, supra.

Since in the instant case the entire estate left by the deceased husband consisted of personal property only, his widow, under the law as it stood at the time of the husband's death on November 9, 1954, became entitled to renounce all the benefits conferred upon her by her husband's will and, in lieu thereof, to elect to take ''her legal share in the personal estate'' left by the husband which ''legal share'' consists of all that part, portion or quantity to which the law of Montana then declared a childless widow shall succeed and have distributed to her in the event her deceased husband leaves no issue. That so-called ''legal share'' of the surviving childless widow, being ''the whole of the estate,'' the law declares ''is succeeded to and must be distributed * * * in the following manner: * * *

''2. If the decedent leaves no issue, the whole of the estate shall go to the surviving * * * wife'' as is provided for in subdivision 2 of section 91-403, Revised Codes of Montana of 1947.

In the Thirty-fourth State Legislative Assembly which convened on January 3, 1955, being less than two months after the death of the testator, George W. Roberts, Senator Donovan Worden of Missoula County and Senator Glenn B. Larson of Mineral County introduced in the state senate a bill for an act entitled, ''An Act Relating to Widows' Election and Amending Section 22-107 of the Revised Codes of Montana of 1947'' which thereafter was duly enacted into law, approved by the governor and became and now is Chapter 231, of the Montana Session Laws of 1955, at pages 501 and 502 and effective from and after the first day of July 1955.

Notwithstanding that this Act was not the law at the time of testator's death, November 9, 1954, and therefore has no-

thing whatever to do with the instant case, yet the majority opinion quotes such amendatory statute in full and follows with the observation that ''The 1955 amendment is not applicable here and is to be considered only as it might aid in statutory construction.''

How may this act of the Thirty-fourth (1955) Montana State Legislature, effective only from and after the first day of July 1955, be considered as an aid in statutory construction of section 22-107 of the Revised Codes of 1947, originally enacted seventy-nine years before as section 7 at page 65 of the Laws of the Ninth Territorial Legislative Assembly (1876) and reenacted sixty years ago as section 234 of the Montana Civil Code of 1895?

In 4 page on Wills, (3d ed.), section 1383, at pages 72 and 73, it is said:

''Election to take against the will is a renunciation of the provisions of the will which are intended primarily for the benefit of the party who so elects and deprives the will of its effect as to such person for such purposes. * * *

''The rights of the person electing to take against the will cannot be cut down by its provisions. It is said that the will is to be construed as though the provisions which are renounced, were not included therein. In the absence of a statute fixing the rights of a person renouncing a will, such person is said to take as though there were no will.''

In 97 C.J.S. Wills, section 1288, subd. a, page 134, notes 30-34, it is said:

''A widow's renunciation of her husband's will operates as a renunciation of the will in toto, and vests in her her dower and statutory rights in her husband's estate, as though, as far as she is concerned, he had died intestate, unless a statute otherwise provides. A renunciation in general terms will have this effect even though it does not specify the particular estate or rights to which the widow is entitled under the statute; * * *''

In Thompson on Wills, (3d ed.), section 478, page 694,

notes 89 and 92, it is said: "Where a surviving spouse renounces a will, the usual laws of descent apply. * * * "The election of the widow to take against the will entitles her to the benefits of statutes of descent and distribution as fully as though there was no will."

In 3 Bancroft's Probate Practice (2d ed.), section 741, page 445, it is said: "Plainly, if the widow repudiates the will and contests its probate, she is entitled to the benefit of the estate as fully and completely as if there had been no will."

In 69 C.J., Wills, section 2438, pages 1137 and 1138, it is said:

"A widow's renunciation of her husband's will operates as a renunciation of the will in toto, and vests in her her dower and statutory rights in her husband's estate, as though so far as she is concerned, he died intestate * * * and a renunciation in general terms will have this effect even though it does not specify the particular estate or rights to which the widow is entitled under the statute * * *"

Again in 69 C.J., Wills, section 2439, at page 1138, it is said:

"Generally, the widow's renunciation of her husband's will precludes her from claiming or accepting any benefits thereunder * * * and the provisions made for her in the will lapse * * * the property passing under the law of succession * * *"

In First National Exchange Bank of Roanoke v. Hughson, 194 Va. 736, 745-747, 74 S.E. (2d) 797, 803, 804, it is said:

"Statutory right of a widow to renounce the provisions made for her in her husband's will existed in Virginia in early Colonial days. * * *

"The widow's right to her share of her deceased husband's estate thus secured to her by statute is an absolute, paramount and certain right which her husband may not deny her.

"This paramount right to share in the estate under and as allowed by statute must be exercised within a year of the time of admission of the will to probate to become effective. That limitation, however, merely restricts the time in which the

right may be availed of and does not lessen its certainty. * * *

"'By this provision * * * whether the provision for her in this will was much or little, she could accept it independent of and beyond her dower in the real estate, or at her election renounce the provision made in the will, and take *absolutely* her distributive share of the personal estate. * * * In other words, in such case, if she renounced the provision made, or if no provision was made, she was thereby placed in precisely the attitude she would have been in had the husband died intestate as to his personal estate. This is illustrated by many decided cases.' (Italics added.) Nelson's Adm'r v. Kownslar's Ex'r, supra, 79 Va. 468, at page 477."

In 97 C.J.S. Wills, section 1288, page 134, notes 37, 38, 41-48, it is said:

"*Time of vesting of interest; right to increment*. The widow's election against the will, confirming her preexisting rights in her husband's estate, vests such estate in her immediately at the date of the election * * *. The vesting of the title relates back to the time of the testator's death with the result that from that moment the elector is the absolute owner of the ultimately distributable sum, although the right to immediate payment of such sum is postponed for the convenience of the estate and as security for the potential rights of creditors and others having prior claims."

In 57 Am. Jur., Wills, section 1527, note 20 at page 1038, it is said that the right of a widow to elect "is a personal right as distinguished from a property right."

To illustrate the error of the majority opinion all that is necessary is an examination of the result it reaches. By the will of the deceased all of his property except $40,000 was to go to his widow. The widow elected to take against the will and is fully bound by her election. By reason of such election it is provided in section 22-108, R.C.M. 1947, that the renunciation by the widow "shall operate as a complee bar against any claim which such widow may afterwards set up to any provi-

sion which may have been thus made for her in the will of any testator, in lieu of dower; * * *" Having elected to take against the will, the widow cannot take under it. The majority opinion says she shall not take her legal full share and gives her all of the estate except $40,000 or exactly what she would have received under the will. Since she has renounced the will, and since the renunciation is valid and in full force and effect, by what legal right may this court make the widow take what she has renounced? The majority says she may not take this property pursuant to section 91-403, R.C.M. 1947. By what right then does she take the portion of the estate the majority has assigned to her? What statute or provision of our Constitution gives to this court or to any court of this state the authority to grant this widow what the majority opinion here assumes to give her?

There is no statute nor is there any provision of our Constitution granting this widow the share given her by the majority opinion herein long after she had renounced the will. The share which she is entitled to is set out in section 91-403, R.C.M. 1947, being the section providing for distribution of property not disposed of by will. The statute, section 91-403, does not require intestacy in order to entitle the widow to its benefits.

Unfortunately the size of this estate, consisting wholly of personal property, appears to have greatly influenced the majority in reaching its decision in this case wherein it makes sacred the specific bequests. Such was not the intent of the Legislature in enacting the statutes granting the right to make a will and it is directly contrary to the legislative intent in enacting the dower statutes. The widow's share was and is what the Legislature sought to protect—not the shares granted to others. For example, let us view the effect of the majority decision as it would affect a lesser estate. In the instant case had the decedent left an estate of but $40,000 or less, consisting solely of personal property, then under the majority decision the widow would have been left penniless under the will.

All would have been consumed by the specific bequests to the decedent's brother and sister and the majority say she must stay penniless even though she had elected to take against such will. This court should not so legislate. District Judge Elwell correctly adjudged and allowed the widow her rights under the law as it stood at the time of his decision. That decision should be affirmed.